

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| HEATH ALLRED, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 6:13-cv-00930-LSC |
| | ) | |
| THE CITY OF CARBON HILL, | ) | |
| ALABAMA, a municipal | ) | |
| corporation, and JAMES | ) | |
| RICHARDSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

Before the Court are Defendants City of Carbon Hill's and James Richardson's motions to dismiss Plaintiff Heath Allred's first amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 13, 14.) The issues have been fully briefed by the parties and are ripe for decision. For the reasons discussed below, the motions are due to be denied.

## I.    Background[1]

---

[1] In a 12(b)(6) motion, the Court must accept as true a plaintiff's factual allegations and construe them in his favor as the non-moving party. *Chepstow, Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004).

Plaintiff Heath Allred ("Allred") was hired as the police chief of Defendant City of Carbon Hill ("Carbon Hill") on August 19, 2010. Carbon Hill did not specify the length of his employment when it hired him. Allred completed his probationary period without incident in February 2011. After completing his probationary period, Allred was told that Carbon Hill's Personnel Rules and Regulations ("Personnel Rules") governed his employment. The Personnel Rules require notice and a hearing for suspensions over three days, demotions, and dismissals.

In 2012, Allred's relationship with Defendant James Richardson ("Richardson"), the mayor of Carbon Hill, began to sour. Allred's wife, Jacque Roberson Allred, announced in early 2012 that she was challenging Richardson in Carbon Hill's mayoral race. Allred received a call in February 2012 from Ken Guin ("Guin"), Richardson's personal attorney. Guin allegedly told Allred that his job would suffer if he did not stop his wife from running for mayor. Allred continued to support his wife's candidacy but did not participate in campaign activity or support his wife's candidacy while in uniform or while performing his job duties.

During the race, Richardson accused Allred of failing drug tests. Allred repudiated this allegation by passing three drug screens. However, Richardson continued to accuse Allred of drug use, absence from work, and neglect of his job

duties. Richardson would also disparage Allred while visiting the dispatch area of the Carbon Hill Police Department. Richardson ultimately prevailed over Jacque Roberson Allred in a close run-off election on October 6, 2012.  Jacque Roberson Allred later filed suit to contest the election.

On November 5, 2012, Richardson met privately with Allred before the Carbon Hill city council meeting. Richardson informed Allred that his employment was terminated and that Carbon Hill would be selecting a new police chief. Richardson told Allred that he should have known his termination was coming because of his wife's candidacy for mayor and his support for her. After the private meeting, the city council appointed a new police chief along with other positions. Allred's attorney asked when Allred should report for duty as a regular employee of the Carbon Hill Police Department. The council then went into executive session, and the city attorney told Allred's counsel after the executive session that Allred was no longer employed by Carbon Hill.

Allred has since filed suit against both Carbon Hill and Richardson, pursuing various state and federal law claims based on the end of his employment with Carbon Hill. Carbon Hill and Richardson have now moved to dismiss all of these claims.

## II.    Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must also contain a "demand for the relief sought, which may include relief in the alternative or different types of relief."

"Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 1950 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678, 129 S. Ct. at 1949 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint.  First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S. Ct. at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007).

In reviewing the complaint, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. The Court must consider the "face of the complaint and attachments thereto" to determine whether the Plaintiff states a claim for relief. *Starship Enterprises of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1253 n.13 (11th Cir. 2013). A plaintiff need not plead each element of the cause of action but must plead "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011 (internal quotations omitted).

## III.    Analysis

Allred alleges federal law claims against Richardson and Carbon Hill under 42 U.S.C. § 1983 ("§ 1983") for violations of his constitutional rights of freedom of association and procedural due process. He also alleges a state law violation of due process based on wrongful termination under Ala. Code § 11-43-230. The Court will examine each claim in turn.

### A.    § 1983 Freedom of Association Claims

A right of free association is implicit in the First Amendment. *Roberts v. U.S.*

*Jaycees*, 468 U.S. 609, 622, 104 S. Ct. 3244, 3252 (1984). There are two types of protected association— association involving "intimate human relationships" and association to engage "in those activities protected by the First Amendment." *Id.* at 617-618, 104 S. Ct. at 3249. These two forms are now called "intimate association" and "expressive association." *McCabe v. Sharrett*, 12 F.3d 1558, 1562-1563 (11th Cir. 1994). "At a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Id.* at 1563. Expressive association, on the other hand, relates to protected rights such as "speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.*

"For a public employee to establish that an employment action has infringed a constitutional right the employee also must demonstrate that he or she has suffered some sort of adverse employment action for exercising the right." *Id.* This can include "not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." *Id.* Allred raises § 1983 claims against both Carbon Hill and Richardson on theories of both expressive and intimate association.

### i.  Freedom of Association Claims Against Carbon Hill

To recover against a municipality, a plaintiff must show: "(1) that [his or her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349 (11th Cir. 2011). Allred has pleaded a plausible claim of municipal liability.

First, Allred has pleaded sufficient facts to state a plausible constitutional violation of his rights of expressive and intimate association. He pleaded that he was hired in August 2010 and that Carbon Hill did not establish a fixed term in office for his service. Allred pleaded that in November 2012 Richardson informed him before a city council meeting that he was terminated because Allred's wife ran against Richardson for mayor and Allred supported his wife's campaign for mayor. After Richardson informed him that he was terminated, the Carbon Hill city council appointed a new police chief, and after an executive session, Allred was told that he was no longer employed by Carbon Hill.

Carbon Hill contends that Allred's term expired when the mayor was re-elected, and thus he was not actually terminated. This argument may be appropriately raised at the summary judgment stage. However, the pleaded facts suggest that Allred

suffered some form of adverse employment action. Even if Allred were not literally "terminated," the pleaded facts suggest that Carbon Hill either refused to hire him on an unconstitutional basis or that he was subjected to some type of adverse treatment when he was suddenly told that he was being replaced. He has pleaded facts to suggest that the action occurred due to his marriage to his wife and his expressive association with her political campaign.  Thus, Allred can survive a motion to dismiss on these claims.

Allred has also pleaded sufficient facts to suggest the existence of the second and third elements to establish municipal liability. Municipalities are not vicariously liable for § 1983 violations by city employees. *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036. Instead, a municipality is subject to § 1983 liability when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S. Ct. at 2035-2036. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S. Ct. at 2037-2038.

A plaintiff can establish a municipal custom by identifying "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 926 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168, 90 S. Ct. 1598, 1613-1614 (1970)). Such a practice is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Here, Allred has not pleaded any facts to suggest that Carbon Hill has a longstanding custom of violating the expressive rights of its employees. Thus, the Court must determine whether Allred has pleaded sufficient facts to suggest that a municipal policy exists.

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298 (1986). For the municipality to be liable in such a case, the decisionmaker must possess "final authority to establish municipal policy with respect to the action ordered." *Id.* at 481, 106 S. Ct. at 1299. To determine whether an official is a final policymaker, the Court must consult state law. *Id.* at 483, 106 S. Ct. at 1300. An official lacks final policymaking authority when his "decisions

are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997). However, the Court's current task on a Rule 12(b)(6) motion "is not to determine who, in fact, wields final policymaking authority but only to consider whether plaintiff has alleged sufficient facts to withstand the city's motion to dismiss." *Brown*, 923 F.2d at 1480.

Allred alleges that Richardson told him that he was terminated before the Carbon Hill city council meeting. The city council then appointed a new police chief and, after a meeting in executive session, determined that Allred was no longer employed by Carbon Hill.

Alabama law allows the mayor to remove any officer not elected by the people for "good cause" and appoint a new officer. Ala. Code § 11-43-81. If the officer was elected by the city council or appointed with its consent, the mayor must tell the council his reasons for dismissing the officer at the next council meeting. *Id.* The council must then approve the act of removal. *Id.* Carbon Hill contends that this establishes that the final policymaker in this case is the city council.

At this stage of the litigation, it is inappropriate without the process of discovery to determine whether the review process of the mayor's decision constitutes a

meaningful administrative review.[2] The Court can decide this issue appropriately on summary judgment. However, even if the Court accepts that the council was the final policymaker, Allred still states a plausible claim for relief against Carbon Hill. Alabama law requires the mayor to provide the council with his reasons for removal. *Id.* Richardson told Allred before the council meeting that he was terminating him because Allred's wife ran against him for mayor and Allred had supported her candidacy. The city council later met in executive session, presumably to discuss Allred's employment with Carbon Hill. At this stage in the pleadings, the Court can infer that Richardson provided the same reasons he gave Allred to the city council, and the city council approved Richardson's decision anyway. The Court can infer from the pleadings that Richardson told the city council to remove Allred and appoint a new police chief because Allred had supported his wife's campaign for mayor, and the council obliged. Through discovery, the parties can determine both whether the city council was the final policymaker and, if so, whether the city council acted

---

[2] In small Alabama cities like Carbon Hill, the mayor has discretion to vote as a member of the city council on any issue and must vote when there is a tie. Ala. Code § 11-43-2. Richardson acknowledges that he is, at least at times, a voting member of the Carbon Hill city council by attempting to invoke his legislative immunity. (Doc. 14 at 17.) "What our precedents mean by meaningful administrative review is plainly review by a municipal official's superiors." *Carter v. City of Melbourne, Fla.*, — F.3d ----, 2013 WL 5305341, at *4 (11th Cir. September 23, 2013). It is possible that Richardson's participation and potential votes in such a session would mean that the city council review process was not "meaningful administrative review" and Richardson may be a final policymaker.

improperly. At the 12(b)(6) stage, however, Allred has stated a plausible claim that Carbon Hill denied his constitutional right to freedom of association.

Thus, the motion to dismiss the freedom of association claims against Carbon Hill is due to be denied.

### ii.   Freedom of Association Claims Against Richardson

The Court reads Allred's complaint to allege that Richardson also violated his rights to freedom of association. Allred does not clearly state whether he is suing Richardson in his individual capacity or his official capacity, but "plaintiffs are not required to designate with specific words in the pleadings that they are bringing a claim against defendants in their individual or official capacities, or both." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1047 (11th Cir. 2008). The Court must look at various factors to determine the type of claim, including "the nature of plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity which serve as an indicator that the defendant had actual knowledge of the potential for individual liability." *Id.* In his freedom of association claim, Allred requests punitive damages against Richardson, and punitive damages are

only available when an official is sued in his individual capacity.[3] *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762 (1981) (determining that municipalities are immune from punitive damages claims), *and Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995) (finding that sheriff acting in his official capacity could not be subject to punitive damages). Richardson also raises qualified immunity, which suggests his awareness that he is being sued in his individual capacity.

As noted in part III(A)(i), *supra*, the Court cannot determine based solely on the pleadings who is the actual final policymaker in this action. Richardson may actually be the final policymaker. However, a city official may be individually liable even if he is not a final policymaker if he is an "official decisionmaker." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1326 (11th Cir. 2003). "[A]n official or formal decisionmaker may often be identified by a rule, e.g., an employee handbook or organizational chart, or in the case of public entity employers, by examining the statutory authority of the official alleged to have made the decision." *Id.* at 1328.

Alabama law gives the mayor authority to terminate a city employee appointed or elected by the city council immediately and even appoint a temporary replacement.

---

[3] Carbon Hill moved for dismissal of any punitive damages claims that Allred raised against Richardson in his official capacity. The Court reads Allred's complaint to only seek punitive damages on his § 1983 claims against Richardson in his individual capacity, not in his official capacity.

Ala. Code § 11-43-81. Even though the mayor's decision may be ultimately subject to review by the council, Allred has pleaded that Richardson told him he was terminated. Richardson told him that he was firing him based on his marriage and his support for his wife's political campaign. Thus, Allred has alleged sufficient facts to state a plausible claim of individual liability as to Richardson based on expressive and intimate association.

Richardson, however, has attempted to invoke qualified immunity protection in this case. Qualified immunity shields government officials engaged in discretionary tasks from liability unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). An official must be acting within his discretionary authority to be eligible for qualified immunity. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-1264 (11th Cir. 2004).

If the official was acting within his discretionary authority, the Court must consider whether a plaintiff has alleged facts to infer the violation of a constitutional right and must also consider whether the right was clearly established at the time of the misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815-816 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001)). Following *Pearson*, the

Court should use its discretion to determine the proper order of the two prongs of qualified immunity analysis. *Id.* at 236, 129 S. Ct. at 818. "A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1343 (11th Cir. 2013) (internal quotation marks omitted).

Richardson never clearly asserts that he was acting in his discretionary authority. He contends instead that he did not terminate Allred's employment, the decision to appoint a new police chief was a decision of the city council, and Richardson was not a policy maker in this case. For the reasons noted above, the Court has already rejected these arguments at the motion to dismiss stage. They do not serve as a basis for establishing Richardson's discretionary authority.

Even if Richardson sufficiently asserted that he was acting within his discretion, Allred has asserted plausible claims that violate clearly established constitutional law. As established in Part III(A), *supra*, there is clearly established law in both the Supreme Court and Eleventh Circuit on the rights of expressive and intimate association. It is also clearly established in the Eleventh Circuit that a state official violates those rights by subjecting that individual to adverse employment action. Thus, the constitutional rights at issue are clearly established. Allred has pleaded a plausible

claim that Richardson's actions deprived him of these underlying constitutional rights, as discussed above. The Court will revisit the issue of qualified immunity if Richardson invokes it at the summary judgment stage, but qualified immunity is not due to be granted at this time.

Finally, insofar as Richardson has invoked legislative immunity on this federal claim, it is inapplicable to him at this stage of the litigation. Local legislators are entitled to absolute immunity for legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S. Ct. 966, 970 (1998). However, Allred's claims are based on Richardson's decision to terminate Allred and Richardson's decision to get the city council to appoint a new police chief, not Richardson's legislative capacity. Moreover, even if Allred's claims involve Richardson's conduct as a member of the city council in its executive session, Richardson is not protected by legislative immunity. Employment decisions are generally cast as administrative decisions, and legislative immunity does not apply. *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009). Individual decisions to replace employees are also administrative, not legislative, decisions. *Smith v. Lomax*, 45 F.3d 402, 406 (11th Cir. 1995).

Richardson has not provided any facts that, based on the "nature of the act," would suggest that any votes relating to Allred or the appointment of the new police

chief were legislative, not administrative. *Bogan*, 523 U.S. at 54-55, 118 S. Ct. at 973. Legislative acts in the employment context involve circumstances where lawmakers terminate an official's position based on budgetary or other broad public policy concerns. *See Bryant*, 575 F.3d at 1306 (noting that commissioners' decision to abolish a position in its budget was a legislative act). Instead, the alleged facts suggest that the decisions to terminate Allred and appoint a new police chief were based solely on Allred's individual circumstances and were not "discretionary, policymaking decision[s] implicating the budgetary priorities of the city and the services the city provides to its constituents." *Bogan*, 523 U.S. at 55-56, 118 S. Ct. at 973.

The motion to dismiss Allred's claim against Richardson for violating his rights of expressive and intimate association is due to be denied.

## B.    § 1983 Procedural Due Process Claim

To make out a procedural due process claim, a plaintiff must show: "'(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).  "Generally, a public employee has a property interest in continued employment if state law or local ordinance in any way limits the power of the

appointing body to dismiss an employee." *Ross v. Clayton Cnty., Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999) (internal quotation marks omitted). Allred pursues procedural due process claims against both Carbon Hill and Richardson.[4]

As with the freedom of association claims, Allred must plead factual matter suggesting a Carbon Hill policy or custom in order to sustain a procedural due process claim. *Bailey v. Bd. of Cnty. Com'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1125 (11th Cir. 1992). For the reasons discussed in Part III(A)(I), *supra*, Allred has pleaded factual information to plausibly suggest that the actions of Richardson or the Carbon Hill city council constitute actions taken by an official policymaker. Thus, if Allred has pleaded plausible facts to suggest a violation of his procedural due process rights, Carbon Hill may be held liable.

Allred pleaded the *prima facie* case. First, he claimed that he had a continued interest in his employment. Allred pleaded that the city council hired him in August 2010 without setting a term of employment as required by statute. Ala. Code § 11-43-

---

[4] As discussed in Part III(A)(ii), *supra*, the Court must determine whether claims are asserted against a city official in his individual capacity, his official capacity, or both. Allred pleaded that "Defendant James Richardson acted on behalf of Defendant City of Carbon Hill, Alabama, in terminating the Plaintiff's employment without affording him procedural due process." (Doc. 10 at 29 ¶ 161). He also seeks punitive damages on this claim against Richardson in his individual capacity. Richardson raised qualified immunity. Thus, based on these circumstances, the Court reads the complaint to attempt to state a claim against Richardson in his individual capacity as well as against Carbon Hill.

46 ("The council shall fix by ordinance the terms of service, not to exceed the term of the mayor, of all the officers appointed or elected whose terms are not prescribed by law.") He contends that Carbon Hill gave him a continued interest in his employment by assuring him that the Personnel Rules, which require a hearing in the event of termination, suspension, or demotion, govern his employment. He also claims a continued interest in his employment on the basis of Ala. Code § 11-43-230, which entitles a police chief to a pre-termination hearing. Although both Carbon Hill and Richardson now claim that his term "expired" and he was not entitled to a hearing based on either the personnel rules or Alabama statute, this is an issue to be resolved on summary judgment.

Allred pleaded that both Richardson and Carbon Hill deprived him of that liberty interest by immediately removing him from his position and appointing a new police chief without any hearing. Richardson told him that he was terminated, and the city attorney informed Allred after an executive session that he was no longer employed by the city. Thus, he has also pleaded that Richardson personally deprived him of his procedural due process rights by telling him that he was fired without any advance notice or hearing. Allred satisfied the *prima facie* elements.

However, Carbon Hill and Richardson contend that even if Allred's rights were

violated, the Alabama state courts provide an adequate state remedy in the form of common law certiorari. Generally, both intentional and negligent deprivations of property rights do not constitute a procedural due process violation if an individual can pursue a meaningful postdeprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-544, 101 S. Ct. 1908, 1917 (1981). However, both of these cases involved the destruction of prisoners' personal property by prison officers. In that context, the Court reasoned that "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*, 468 U.S. at 533, 104 S. Ct. at 3203.

The Court has applied different reasoning in the context of employment termination actions. There, a "root requirement" of Due Process is that "'an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 786 (1971) (emphasis in original)). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest

in his employment." *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 569-570, 92 S. Ct. 2701, 2705 (1972)). The Court reasoned that denial of a person's livelihood is a significant deprivation, and any terminated worker faces burdens finding employment elsewhere while questions surround the circumstances of his or her termination. *Id.* at 543, 105 S. Ct. at 1494. In *Loudermill*, the plaintiff actually pursued several layers of administrative review, but not state court remedies, before pursuing a claim in federal court. *Id.* at 535-536, 105 S. Ct. at 1490. The Court found that the plaintiff still stated a claim for relief based on the lack of an initial pre-termination hearing. *Id.* at 547-548, 105 S. Ct. 1496.

"Post-deprivation remedies do not provide due process if pre-deprivation remedies are practicable." *Fetner v. City of Roanoke*, 813 F.2d 1183, 1186 (11th Cir. 1987). An individual "states a valid procedural due process claim when he alleges that the defendants failed to give him written notice or a hearing before firing him." *Id.* In the employment context, the Court must consider whether a pre-termination hearing was made available to an employee as a threshold inquiry of due process. *See McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc). In *McKinney*, the Eleventh Circuit essentially developed a two-prong analysis of procedural due process violations in employment termination actions. First, the Court must establish that the

individual had the basic pre-termination hearing required by *Loudermill*. *Id.* Second, if the initial hearing was held and the individual argues instead that the hearing was in some way procedurally defective, the Court must consider whether the state has made available adequate means to remedy the deprivation. *Id.* at 1563. For example, if a plaintiff contends that a state board is biased in sanctioning an employee, "only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation." *Id.*

Here, the Court need not reach the issue of whether common law certiorari is an appropriate post-deprivation remedy because Allred has pleaded facts to suggest that he was denied any pre-termination hearing. He pleaded that he was told by Richardson that he was fired, and the city attorney corroborated this statement after the city council met in executive session. Neither Richardson nor the city council provided Allred with any opportunity to defend himself. He was told by Carbon Hill's mayor on the spot that he was fired, and no hearing was ever held. Even though Allred did not pursue a common law writ of certiorari, he can still proceed with a procedural due process claim based on Carbon Hill's total denial of an initial pre-termination hearing.

Finally, the Court must consider whether Richardson is entitled to qualified

immunity or legislative immunity. The test for these immunities is set forth in part III(A)(ii), *supra*. Assuming that Richardson acted within his discretion, there is still a plausible claim based on the pleadings that he violated clearly established law in the Supreme Court and Eleventh Circuit. A terminated public employee is entitled to a basic hearing to satisfy due process, and the pleaded facts suggest that Richardson summarily terminated Allred without giving him either notice of the termination or an opportunity to respond. Moreover, Allred has pleaded claims against Richardson based on his executive acts as mayor. However, even if he pleaded claims against Richardson based on votes of the Carbon Hill city council, he is not entitled to legislative immunity for the reasons provided in part III(A)(ii), *supra*.

Thus, the motion to dismiss the procedural due process claim is due to be denied.

### C.    State Law Wrongful Termination Claim

Allred also sues Carbon Hill on a state law theory of wrongful termination.[5] Ala. Code § 11-43-230 provides that "[e]very municipality shall provide a predisciplinary hearing prior to the suspension or termination of its law enforcement officers." A

---

[5] Allred's amended complaint only seeks damages against Carbon Hill, and his factual allegations in this count involve Carbon Hill's failure to provide the pre-disciplinary hearing as applied by law. Thus, this count only states a claim as to Carbon Hill.

"law enforcement officer" is defined to include "a permanent and regular employee with law enforcement duties, including police chiefs and deputy police chiefs." Ala. Code § 11-43-231. This definition does not include "any person who is serving a probationary period of employment, or any person whose term of office has expired." *Id.*

Allred pleaded that he was hired in August 2010 and terminated by Richardson in November 2012. He contends that the city council never established a term limit for his employment, and as such he was terminated when Richardson informed him that he was fired and that the city council would be appointing a new police chief. After a meeting in executive session, Carbon Hill's city attorney confirmed that Allred was terminated. Based on these facts, Allred has pleaded a plausible claim that he was terminated in order to survive a Rule 12(b)(6) motion to dismiss. The defendant may argue on summary judgment that Allred's term in office expired and that he was not actually terminated. However, the parties are entitled to discovery to determine the facts surrounding Allred's hiring and his ultimate removal from office.

Thus, the motion to dismiss the state law claim against Carbon Hill is due to be denied.

## IV.    Conclusion

For the foregoing reasons, both Carbon Hill's and Richardson's motions to dismiss (Docs. 13, 14) are due to be denied. All claims will proceed at this time.

A separate order will be entered.

Done this 7th day of October 2013.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256