FILED
2014 Oct-24  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| HEATH ALLRED, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 6:13-cv-00930-LSC |
| | ) | |
| THE CITY OF CARBON HILL, | ) | |
| ALABAMA, a municipal | ) | |
| corporation, and JAMES | ) | |
| RICHARDSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## Memorandum of Opinion

Plaintiff Heath Allred ("Allred") brought this action under 42 U.S.C. § 1983 and Ala. Code § 11-43-230 *et seq.*, seeking damages based on his non-reappointment as the Carbon Hill police chief. Before the Court is Defendants City of Carbon Hill ("Carbon Hill") and James Richardson's ("Richardson") motion for summary judgment. (Doc. 38.) The issues have been fully briefed and are ripe for review. For the reasons stated below, summary judgment is due to be granted with respect to Allred's procedural due process and wrongful termination claims, and denied with respect to his freedom of association claims.

# I.   BACKGROUND

Allred was appointed as the Carbon Hill police chief on August 19, 2010. Carbon Hill did not specify the length of Allred's employment when it appointed him. After completing his probationary period, Allred was told that Carbon Hill's Personnel Rules and Regulations ("Personnel Rules") governed his employment. The Personnel Rules require notice and a hearing for suspensions over three days, demotions, and dismissals.

In 2012, Allred's professional relationship with Richardson began to weaken. Allred's wife, Jacque Roberson Allred, announced that she was challenging Defendant Richardson in Carbon Hill's mayoral race. Allred claims that he received a phone call from Ken Guin ("Guin"), Richardson's attorney, in February of 2012. Guin allegedly told Allred that his job would suffer should Allred's wife continue her bid for mayor. Allred supported his wife in the mayoral race, participating in occasional campaign meetings and helping build campaign signs. However, Allred claims that he never supported his wife's candidacy while in uniform or while performing his official duties as police chief.

Richardson ultimately won the mayoral race, narrowly beating Allred's wife in a run-off election on October 6, 2012.  Richardson replaced outgoing mayor Chris

Hart in early November 2012. On November 5, 2012 Richardson and Allred met privately before a Carbon Hall City Council ("Council") meeting. Richardson told Allred that he was ending Allred's employment as Carbon Hill police chief. Richardson allegedly cited Allred's wife as the reason he was not reappointing Allred, as Richardson told Allred that "this campaign has been dirty," when Allred asked why he was being terminated.[1] (*See* Doc. 39-2, at 22.)

Following this discussion, the Council appointed a new police chief at Richardson's suggestion. Richardson presided over the session and participated in the voting. The Council decided to retain the individuals serving as other city officials, making Allred the only city official not reappointed. Allred's attorney asked when Allred should report for duty as a regular employee of the Carbon Hill Police Department. The Council went into executive session to discuss the issue, and the city attorney told Allred after the session that Allred was no longer employed by Carbon Hill. Allred claims that Richardson initially suggested that Allred "didn't have anything to worry about" with respect to keeping his job, but that Richardson changed his mind after the election. (*See* Doc. 39-2, at 23.) However, Allred acknowledges that

---

[1] There is a debate over whether Allred was terminated or whether his term of office simply expired. This Court will occasionally use the word "termination" to refer to Allred's non-reappointment; this does not mean that the Court endorses Allred's opinion that his non-reappointment constitutes a termination.

no one ever told him that his appointment as police chief was permanent, nor that Allred would not have to be reappointed following the election of a new mayor and city council.

Allred filed this action in state court on March 28, 2013, and it was removed to this Court on May 16, 2013. Carbon Hill and Richardson previously filed a motion to dismiss for failure to state a claim, and Richardson further argued that he was entitled to qualified immunity with respect to the alleged constitutional violations. This Court found that Allred pleaded sufficient facts to withstand a motion to dismiss, and also refused to grant qualified immunity to Richardson since there was a possibility that Allred's complaint presented "clearly established" violations of law. Carbon Hill and Richardson now bring a motion for summary judgment and Richardson reasserts the defense of qualified immunity.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287,

1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327(1986).

## III.  Discussion

Allred brings claims against Carbon Hill and Richardson under 42 U.S.C. § 1983 for violations of his constitutional rights of procedural due process and freedom of association. He also brings a state law wrongful termination claim under Ala. Code § 11-43-230. This Court will examine each in turn.

### A.  Procedural Due Process Violation

One of Allred's § 1983 claims alleges a pre-deprivation violation of procedural due process. In other words, Allred argues that he was fired as police chief without first being provided a "constitutionally adequate" opportunity to rebut the rationale for the termination. A procedural due process claim requires that a plaintiff show "'(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Due process typically requires that any deprivation of "life, liberty, or property be preceded by notice and the opportunity for a hearing." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted); *see also id.* ("We have described the 'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of

any significant property interest.'" (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971))). Carbon Hill and Richardson concede that Allred was not provided any pre-termination opportunity to contest the alleged deprivation. Thus, Allred's procedural due process claim turns on whether he had a constitutionally-protected interest in continued employment as the Carbon Hill police chief.

Restrictions on a public employer's ability to terminate an employee can create a constitutionally-protected interest in continued employment. *See Ross v. Clayton Cnty., Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999) (stating that "[g]enerally, a public employee has a property interest in continued employment if state law or local ordinance in any way limits the power of the appointing body to dismiss an employee" (internal quotation marks omitted)); *see also Warren v. Crawford* 927 F.2d 559, 562 (11th Cir. 1991) (stating that "[s]tate law determines whether a public employee has a property interest in his or her job")). Allred points to Ala. Code § 11-43-230 as the state law creating a property interest in continued employment. Section 11-43-230 states that "[e]very municipality shall provide a predisciplinary hearing prior to any suspension or termination of its law enforcement officers." Ala. Code § 11-43-230(a) (2014). Section 11-43-231 defines "law enforcement officer" to include police chiefs, but excludes from the definition "any person whose term of office has expired." *See*

Ala. Code § 11-43-231 (2014).

Carbon Hill and Richardson argue that Allred's term as police chief *did* expire with the election of the mayoral board, and that he therefore has no constitutionally-protected interest in continued employment under Ala. Code § 11-43-230. Defendants direct the Court to Ala. Code. § 11-43-4, which states that:

> In cities having a population of less than 6,000 and in towns, the council shall elect a clerk and fix the salary and term of office, and may determine by ordinance the other officers of the city or town, their salary, the manner of their election and the terms of office . . . . The clerk and such other officers elected by the council *shall serve until their successor or successors are elected and qualified.*

Ala. Code § 11-43-4 (2014) (emphasis added). In addition, Ala. Code § 11-43-46 states that the Council should fix municipal officers' terms, including those of police chiefs, so that they do "not [] exceed that of the mayor." *See* Ala. Code § 11-43-46 (2014).[2]

Case law interpreting Ala. Code § 11-43-4 is sparse. However, under Alabama law, courts are to interpret statutory terms in a manner that effectuates the intent of the legislature, as expressed in the statute itself. *See Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 714 So.2d 293, 296 (Ala. 1998). The plain language of the statute at issue is the primary tool for discerning legislative intent. *See Clark v. Riley*, 595 F.3d

---

[2] Citing Ala. Code § 11-43-46, Allred argues that he has at least a four-year expectation in continued employment, as the Council never affixed a definite term to his office when appointing him as police chief.

1258, 1266 (11th Cir. 2010) (stating that "determining legislative intent begins with the plain language of the statute" (citing *IMED Corp. v. Sys. Eng'g Assocs. Corp.*, 602 So. 2d 344, 346 (Ala. 1992))). A court should deviate from the ordinary meaning only if a literal construction of the statute would result in an unreasonable or absurd result. *See id.* (citing *Ex parte Meeks*, 682 So. 2d 423, 428 (Ala. 1996)).

Following these principles, this Court finds that Allred's term of office expired when he was not reappointed by the Council following the mayoral election, thus placing him outside the definition of "law enforcement officer" under Ala. Code § 11-43-231. Ala. Code. § 11-43-4 states that municipal officers are to serve until "their successor or successors are elected and qualified." Furthermore, Ala. Code § 11-43-46 states that the Council should limit municipal officers' terms, including those of police chiefs, so that they do "not [] exceed that of the mayor." Reading these two provisions in conjunction, it is clear that, once a new mayor is elected, all municipal officers must be reappointed to continue employment in their position; otherwise, their term of office simply expires.

The few courts to interpret the language of Ala. Code. § 11-43-4 have reached the same conclusion. *See, e.g., In re Potter*, 354 B.R. 301, 307 (Bankr. N.D. Ala. 2006) (stating that, under Ala. Code § 11-43-4, "[t]he council's election of a new police chief

effectively ended the term of the plaintiff's service as police chief . . . . [T]he action appears to conform to Ala. Code § 11-43-4"); *see also id.* at 321 (stating that the council's decision to appoint another person as police chief was "a discretionary action within the scope of their authority," and that such authority "by virtue of Ala. Code § 11-43-4, includes the power to make administrative decisions about personnel such as appointing [plaintiff's] successor").[3]

In fact, Allred cites only one case in support of his argument that he has an interest in employment extending past the election of a new mayor, and that court reached a similar conclusion when interpreting Ala Code § 11-43-4 in conjunction with § 11-43-46. *See Works v. Town of Fyffe*, cv-2006-327 (Dekalb Cnty. Cir. Ct., Mar. 25, 2010) ("Based solely on the foregoing statutes, without question, Plaintiff's term was tied to that of the Mayor whose term expired in October, 2004 and Plaintiff's employment expired with that of the Mayor with or without actions of the new

---

[3] The *Potter* court did find that, while Ala. Code § 11-43-4 defines when a municipal officer's term will expire, it does *mandate* a new appointment at the conclusion of that term, and therefore it was still possible for the plaintiff to bring a claim for discriminatory termination based on his status as a bankruptcy debtor. This Court agrees with such reasoning to the extent that a non-reappointment may still be considered an "adverse employment action." *See infra* Part III.B.1. However, since a procedural due process claim requires a legitimate, mutually understood expectation in continued employment, a *possibility* of reappointment will not act to create a constitutionally-recognized property interest. *See Bd. of Regents of State Coll. v. Roth,* 408 U.S. 564, 577 (1972) (stating that a vaguely defined, unilateral expectation is not enough to create an enforceable interest in continued employment). To that end, Allred's claim that Richardson told him "he had nothing to worry about" concerning his job is too vague to create a property interest as well.

council.'"). Furthermore, the Alabama Attorney General has interpreted near-identical language in a neighboring section of the Alabama Code, § 11-43-3, to mean that a police chief's term expires upon election. *See* Ala. Op. Atty. Gen. No. 2013-020, 2013 WL 226995, at *3 (Jan. 9, 2013) (stating that "[t]he term of office of the . . . police chief . . . ends generally by operation of general law when a newly elected council takes office" (citing Ala. Code § 11-43-46)).

Furthermore, the Court is not persuaded by Allred's argument that Carbon Hill's failure to affix a defined term to his office when appointing him as police chief should grant Allred an expectation in continued employment. The fact that the Council failed to initially define the length of Allred's appointment does not grant him an interest in employment that extends past election of a new mayor. Ala. Code § 11-43-4 states that the city council "*may* determine" by ordinance the terms of service of municipal officers. While Ala. Code § 11-43-46 recasts this as a mandatory act, the statute applies only to appointed officers whose terms of service "are not proscribed by law." *See* Ala. Code § 11-43-46 (2014). Section § 11-43-4 does proscribe a police chief's term of office, stating that an individual holds the office only until "the election and appointment of his successor." Such language may be fairly interpreted to mean that an individual holds the office of police chief only until a new mayor is

elected and chooses to appoint someone else to the position. Furthermore, Ala. Code § 11-43-46 explicitly limits all municipal officers' terms of service to a length "not to exceed the term of the mayor," and the previous mayor's term expired when Richardson was elected.

To conclude, Ala. Code § 11-43-230 was not intended to grant municipal officers a property interest in reappointment. Rather, as the language of the statute makes clear, Ala. Code § 11-43-230 seeks to provide due process protections to those officers fired *during* their appointed tenure. The statute mandates "predisciplinary hearings prior to the suspension and termination of [] law enforcement officers." The statute concerns itself with officers fired as a result of misconduct allegations warranting a disciplinary hearing; nowhere does the statute's language contemplate officers who lost their position due to simple non-reappointment.[4] In fact, Ala. Code § 11-43-231 expressly denies the protections of Ala. Code § 11-43-230 to those officers that have lost their position due to expiration of their term of office.

Because Allred's term of office expired when he was not reappointed, he was

---

[4] This Court reaches a similar conclusion when looking to the language of the Carbon Hill Personnel Rules. While the Personnel Rules promise a hearing before enacting dismissals, the remainder of the Personnel Rules makes clear that the guarantee of a hearing is limited to terminations occurring during one's tenure and on the basis of misconduct allegations. At no point do the Personnel Rules foster an expectation in reappointment following the conclusion of a term of office.

not a "law enforcement officer" under Ala. Code §§ 11-43-230 & 31, and therefore may not use those state laws to establish a constitutionally-protected expectation in continued employment.[5] Since the Court finds that Ala. Code § 11-43-230 does not afford Allred a continued interest in employment, summary judgment is also due to be granted with respect to Allred's wrongful termination claim.

## B.    Freedom of Association Claims

Allred also brings freedom of association claims under 42 U.S.C. § 1983. Specifically, Allred claims that the decision not to reappoint him as police chief was based on Allred's political and personal association with his wife, who unsuccessfully ran against Richardson for mayor. A right of free association is implicit in the First Amendment. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). There are two types of protected association—association involving "intimate human relationships" and association to engage "in those activities protected by the First Amendment." *Id*. at 617–18. Intimate association concerns those relationships inherent to a family structure. *See McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (stating that "[a]t a minimum, the right of intimate association encompasses the personal

---

[5] Allred also argues that, even if he did not have a protected interest in reappointment as police chief, he did have an interest in continued employment in general. Allred was hired into the Carbon Hill Police Department as police chief and was never promised employment in another capacity. Thus, there is no supporting authority for the argument that Allred somehow acquired an interest in a separate position during his time as police chief.

relationships that attend the creation and sustenance of a family," including marriage). Expressive association, on the other hand, relates to protected rights such as "speech, assembly, petition for redress of grievances, and the exercise of religion." *Id*.

Allred brings § 1983 claims based on his right to both intimate and expressive association. Carbon Hill and Richardson argue that Allred's non-reappointment is not an "adverse employment action," which is required to sustain a First Amendment claim for retaliation by a public employer. In addition, Richardson seeks both qualified immunity and legislative immunity, while Carbon Hill argues there is not sufficient basis to hold the city municipally liable. The Court will address these issues in turn.

### 1.  *Non-Reappointment as an "Adverse Employment Action"*

To succeed his First Amendment-based § 1983 claim, Allred must have suffered an "adverse employment action" as a result of exercising his freedom of association rights. *See id*. at 1563, 1564 ("For a public employee to establish that an employment action has infringed a constitutional right the employee also must demonstrate that he or she has suffered some sort of adverse employment action for exercising the right.").

Carbon Hill and Richardson argue that, since Allred had no continued property

interest in employment, his non-reappointment cannot be considered an adverse employment action. However, an employer's refusal to reappoint an individual to a position, while insufficient to establish a protected property interest, *can* establish an adverse employment action. *See id.* (stating that an "adverse employment action" can include "not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands"); *see also Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (finding that a fired public employee still had a viable First Amendment claim despite his lack of tenure, and stating that "[f]or least a quarter of a century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons . . . [i]t may not deny [the benefit] on a basis that infringes on his constitutionally protected interests—*especially his interest in free speech*" (emphasis added)); *Latessa v. N.J. Racing Comm'n*, 113 F.3d 1313, 1319 (3d Cir. 1997) (stating that "[u]nlike Fourteenth Amendment due process rights, appellant's First Amendment right to be free from retaliation for speech is not defeated by the lack of a property or liberty interest" (citing *Roth*, 408 U.S. at 599)).[6]

---

[6] In the face of this long-standing precedent, Carbon Hill and Richardson offer a single, unpublished case standing for the proposition that the lack of a protected interest in continued employment precludes Allred's non-reappointment from being considered an "adverse employment action."

Allred's non-reappointment effectively acted as a firing, since it concluded his employment with the Carbon Hill Police Department. Having found that non-reappointment is an adverse employment action, the Court now turns to the merits of Allred's freedom of association claims under 42 U.S.C. § 1983.

### 2. Freedom of Association Claim Against Richardson in His Individual Capacity

Allred claims that Richardson violated his First Amendment-based freedom of association rights by terminating Allred due to his association with his wife's political campaign. The Eleventh Circuit has applied two different standards when addressing whether a government employee's freedom of association rights were violated. *See McCabe*, 12 F.3d at 1554–55 (discussing the *Pickering* and *Elrod-Branti* analyses for determining whether an adverse employment action constituted a First Amendment violation). Furthermore, Richardson must be considered an "official decisionmaker" to be held liable in an individual capacity under 42 U.S.C. § 1983. *See Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1326–27 (11th Cir. 2003).

### a. Richardson as an "Official Decisionmaker"

An individual must be considered an "official decisionmaker" to be held liable in an individual capacity under 42 U.S.C. § 1983. *See id*. Official decisionmakers "may often be identified by a rule . . . or, in the case of public entity employers, by examining

the statutory authority of the official alleged to have made the decision." *See id.* at 1328 (citing *Hitt v. Connell*, 301 F.3d 240, 247–49 (5th Cir. 2002)).

Alabama law gives Richardson broad authority concerning appointments and terminations. *See* Ala. Code § 11-43-81 (2014) (detailing the mayor's appointment, termination, and supervisory powers, and explicitly stating that a mayor "shall have the power to appoint all officers whose appointment is not otherwise provided by law"). Alabama law gives the mayor of small cities such as Carbon Hill authority to vote with the city council on certain issues, and Richardson voted in the decision to appoint Bobo over Allred. *See* Doc. 39-4, at 5. Furthermore, while Richardson and Carbon Hill argue that Richardson was not a "final policymaker" for the purposes of municipal liability, they essentially concede that Richardson was an official decisonmaker acting under a grant of state law. *See* Doc. 39, at 24 (stating that "it is undisputed that the Mayor and Council were exercising their statutory authority with regard to appointing city officials").

### b.    *Evaluating Allred's Freedom of Association Claims*

There is a genuine dispute of material fact as to whether Allred's First Amendment rights were violated regardless of whether the *Pickering* standard or the *Elrod-Branti* standard is applied. The Court will briefly discuss each, despite the fact

that the parties do not articulate any standard in their briefing for the Court to apply

when analyzing Allred's First Amendment-based § 1983 claims. When analyzing

whether a government employee's freedom of association rights have been violated

under the *Pickering* standard, the Eleventh Circuit uses a three-part test:

> The first step is for the court to balance an employer's interest in
> maintaining an efficient workplace against the weight accorded the
> employee's First Amendment rights [i.e., the *Pickering* balancing test].
> If the First Amendment interest is of sufficient importance, Plaintiffs
> then have the burden of showing that the protected activity "was a
> substantial motivating factor in the" decision [to effect an adverse
> employment action]. If Plaintiffs demonstrate this, then the burden shifts
> to Defendants to prove by a preponderance of the evidence that they
> would [have taken the action] regardless of the parties' divergent
> political inclinations.

*Thomas v. McKee*, 205 F. Supp. 2d 1275, 1284 (M.D. Ala. 2002) (quoting *Morgan v.*

*Ford*, 6 F.3d 750, 754 (11th Cir. 1993)) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563,

568 (1968)).[7]

The parties spend little time addressing whether there is sufficient evidence for

a jury to reasonably find a freedom of association violation. However, Allred has

produced evidence to suggest Richardson chose not to reappoint Allred based on

---

[7] *Pickering* analysis normally implicates a forth factor: that the speech prompting retaliation be of "public concern." However, the Eleventh Circuit does not consider this factor when freedom association—as opposed to freedom of speech—is at issue. *See Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb Cnty.*, 809 F.2d 1546, 1558 (11th Cir. 1987).

Allred's marriage and his wife's political campaign. Specifically, Allred states that Richardson told him it had been a "dirty campaign," when Allred asked why he was being terminated as police chief. In addition, Carbon Hill and Richardson offer no argument addressing the first step of the *Pickering* balancing test (weighing the employer's interest in an efficient workplace against the public employee's interest in expression), presumably because there is no evidence that Allred's off-duty association with his wife's political campaign impeded his ability to effectively serve as police chief.

Furthermore, viewing the facts in the light most favorable to the non-movant, there is no basis for concluding Richardson would have chosen not to reappoint Allred regardless of Allred's intimate and expressive associations. In fact, Allred has provided evidence suggesting that his association with his wife's campaign was the reason for his non-reappointment. Thus, under *Pickering*, there is a genuine issue of material fact as to whether Allred's First Amendment rights were violated.

Allred also produces sufficient evidence to raise a genuine issue of material fact under the *Elrod-Branti* standard. Under *Elrod* and *Branti*, political patronage firings are due "exacting scrutiny," and firings based off supposed political association will be upheld as constitutional only if the government has a "vital interest in ensuring that

'representative government [will] not be undercut by tactics obstructing the implementation of policies of the new administration.'" *See McCabe*, 12 F.3d at 1565 (quoting *Elrod v. Burns*, 427 U.S. 347, 367 (1976)); *see also id.* (stating that "such dismissals are justifiable only when 'the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved'" (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980))).

Richardson and Carbon Hill offer no evidence that Allred's firing was due to feelings of professional disloyalty or that Allred would become ineffective as a police chief as a result of his wife's unsuccessful mayoral campaign. To the contrary, the evidence on record suggests that Allred's firing was the result of Richardson's personal animus, as Richardson told Allred he was not being reappointed because the preceding election had been "a dirty campaign." Allred also states that he received a phone call from Richardson's attorney saying that Allred's job would suffer if his wife did not withdraw from the election. Thus, there is a genuine issue of material fact under the *Elrod-Branti* standard as well.

### 3.    *Qualified Immunity for Richardson*

Richardson argues that, even if the Court does find that a jury could reasonably find a violation of Allred's freedom of association rights, Richardson should be

immune from suit due to qualified immunity. A governmental official acting within the scope of his employment is "shielded from suit against him in his individual capacity if, while performing a discretionary function, his conduct did not violate a clearly established right of which a reasonable person would have known." *Chandler v. Sec'y of Fla. Dept. of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An official is performing a discretionary function if the official was "performing a legitimate, job-related function . . . through means that were within his power to utilize." *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004) (citing *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994)). As a general matter, Alabama law gives Richardson the authority to replace municipal officers at the conclusion of their tenure. Furthermore, the relevant inquiry at this step is not whether Richardson's actions were an unconstitutional exercise of his authority. *See id.* at 1265. Rather, Allred must demonstrate that Richardson's exercise of discretionary authority constituted a violation of clearly established law. *See id.* at 1267–68.

When deciding whether a right is "clearly established," courts must define the right at issue with specificity, taking into account the unique facts of the case. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (stating that "we have instructed that

courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))). This is especially true in First Amendment cases, as the fact-specific balancing test makes it difficult for defendants to be "on notice" that their conduct violates clearly established law. *See Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994) (stating that "because [the *Pickering*] multi-factor balancing process admits few bright lines, a government agent will know only in the most extraordinary cases that 'what he is doing' does violate the plaintiff's rights" (citing *Dartland v. Metro. Dade Cnty.*, 866 F.2d 1321, 1323 (11th Cir. 1989); *Sims v. Metro Dade Cnty.*, 866 F.2d 1230, 1236–37 (11th Cir. 1992))).

However, an exact factual analogue does not have to exist for a defendant to be on notice. *See Thomas*, 205 F. Supp. 2d at 1288 n.13 ("Although qualified immunity does not require public officials to possess a logician's inferential ability, neither does it require absolutely identical factual scenarios before liability may be imposed. Rather, the applicable standard is whether 'a *reasonable person* in the position of the defendant would know he is violating clearly established law.'" (quoting *Hansen*, 19 F.3d at 578)). Furthermore, this Court remains mindful to draw all factual inferences in favor of the non-movant when crafting the factual contours of the case for the purposes of

qualified immunity analysis.

Richardson may fairly be considered "on notice" that his decision not to reappoint Allred violated the First Amendment. Refusing to reappoint someone to government position has long-qualified as an "adverse employment action." *See Cooper v. Smith*, 89 F.3d 761, 765 (11th Cir. 1996) (finding that a public employer's failure to renew a deputy sheriff's one-year commission due to the deputy exercising First Amendment rights constituted an adverse employment action); *see also Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 n.8 (1990) (discussing the broad scope of adverse employment actions prohibited by the First Amendment, and stating that the First Amendment protects state employees "not only from [political] patronage dismissals, but also from even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights"); *id.* at 76 n.9 (reaffirming that a plaintiff does not need a protected interest in continued employment to argue that she was dismissed for an unconstitutional reason).

In addition, Richardson and Carbon Hill offer no evidence that Allred's non-reappointment was motivated by concerns of loyalty or inefficiency as a result of his intimate and expressive associations under the First Amendment. Courts have

routinely held that political animus alone is an unconstitutional basis to take adverse action against all but the highest-level, policy-making employees. *See id.* at 79 (finding a refusal to promote—which, like reappointment, is a largely discretionary action—based solely on the employee's political affiliation to be unconstitutional); *see also Thomas*, 205 F. Supp. at 1287–88 (finding a denial of qualified immunity to be the obvious conclusion when a defendant does not even attempt to justify the adverse employment action under the *Pickering* balancing test).

With rare exceptions inapplicable to this case,[8] it is long-settled that public employers may not take adverse employment action against employees based solely on political association. Therefore, Richardson should have been "on notice" that he was violating Allred's First Amendment freedom of association rights. Richardson's request for qualified immunity is due to be denied.

### 4.   *Legislative Immunity*

As an alternative to qualified immunity, Richardson seeks legislative immunity,

---

[8] One such exception is that discussed in *Underwood v. Harkins*, 698 F.3d 1335, 1341–44 (11th Cir. 2012) (discussing the Eleventh Circuit's approach to freedom of speech/association claims when the plaintiff was a close "confidential subordinate" to the firing employer). Richardson and Carbon Hill do not make an argument that Richardson was justified in not reappointing Allred on such grounds. Furthermore, as discussed, there is nothing on record to indicate that Richardson had reason to consider Allred untrustworthy. In fact, during the mayoral race, Richardson implied that he had confidence that Allred would be a loyal police chief should Richardson win the election. *See* Doc. 39-2, at 23 (claiming that Richardson told Allred he "didn't have anything to worry about" with respect to his job should Richardson win the election).

arguing that the decision not to reappoint Allred was undertaken in his capacity as a member of the Council. However, employment decisions are generally cast as administrative acts, and legislative immunity does not apply. *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009). Also, legislative acts in the employment context involve circumstances where lawmakers end a city official's employment as a result of policymaking. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54–56 (1998) (stating that "legislative acts" are those that implicate the "budgetary priorities of the city and the services the city provides to its constituents").

Richardson and Carbon Hill do not argue that the vote to deny Allred continued employment was one of policy. Rather, they seem to rely exclusively on the notion that the act of voting is a *per se* legislative function, and thus legislative immunity should apply. The Eleventh Circuit has expressly and continuously rejected this argument. *See, e.g.*, *Smith v. Lomax*, 45 F.3d 402, 406 (11th Cir. 1995) (citing *Crymes v. DeKalb Cnty.*, 923 F.2d 1482 (11th Cir. 1991))). Therefore, Richardson's request for legislative immunity is due to be denied.[9]

---

[9] Carbon Hill and Richardson also argue that they are entitled to state-agent immunity under Alabama law. Of course, a defendant cannot use state law to seek immunity from alleged violations of rights secured by the Constitution of the United States. To do so would be in violation of the Supremacy Clause.

### 5.    *Municipal Liability*

To recover against a municipality, a plaintiff must show: "(1) that [his or her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Bankshot Billiards, Inc., v. City of Ocala*, 634 F.3d 1340, 1349 (11th Cir. 2011). Implicit to the first requirement is the need for the plaintiff to have suffered an "adverse employment action." *See McCabe*, 12 F.3d at 1563. Having already discussed whether sufficient evidence exists for a finding of a constitutional violation, this Court proceeds directly to the "policy or custom" requirement.

While municipalities are not vicariously liable for § 1983 violations, a municipality may be held liable when a plaintiff can show that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690–91 (1978) (also stating that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under

§ 1983"). Municipal liability "may be imposed for a single decision," provided that the municipal decisionmaker possessed "final authority to establish municipal policy with respect to the action ordered." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *see also McTernan v. City of York, Pa.*, 564 F.3d 636, 658–59. An official lacks final authority when his or her decisions are "subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997).

Defendants Carbon Hill and Richardson argue that Richardson lacked "final authority" to terminate Allred, since Richardson's decision to nominate someone other than Allred for police chief still had to be approved by the Council. Generally, the necessity of approval by a city council or commission will preclude a finding that a policy maker's decision was "final." However, the Eleventh Circuit has emphasized that *meaningful* administrative review must be provided for such decisions; a mere "rubber stamp" by a supervisory body will not suffice. *See Morro v. City of Birmingham*, 117 F.3d 508, 514–15 (11th Cir. 1997) (considering not only the defendant-city's governing regulations, but also "evidence of its actual practices" when deciding whether a municipal officer was a "final decisionmaker" for the purposes of municipal liability).

Allred provides evidence that, before the Council had even considered who would be appointed police chief, Richardson informed Allred that he would not be reappointed to the position, which suggests that Richardson was already confident that Allred's non-reappointment would be summarily approved by the Council. Richardson recommended the nomination of Bobo over Allred while presiding over the Council. As mayor of Carbon Hill, Richardson had discretion to vote as a member of the Council on any issue, *see* Ala. Code § 11-43-2 (2014), and Richardson admits to voting for the appointment of Bobo over Allred. Finally, Richardson met with the Council behind closed doors immediately following the appointment vote, presumably to participate in discussions concerning whether to retain Allred in any capacity.

Considering the influence and proximity of the mayor's office to the Carbon Hill City Council, the Council's appointment vote cannot be considered "meaningful administrative review" of Richardson's decision not to reappoint Allred. The Eleventh Circuit has suggested that "meaningful" administrative review must come from a body with some degree of control over the "subordinate" that makes the initial decision. *See Carter v. City of Melbourne, Fla.*, 713 F.3d 1161, 1167 (11th Cir. 2013) (stating that "[w]hat our precedents mean by meaningful administrative review is plainly review by a municipal officer's superiors"). As mayor, Richardson presided

over the appointment session and participated in the voting. Review by a group with which Richardson was so involved himself can hardly be considered "meaningful."

Allred provides further evidence that the appointment session was rushed and superficial, and that the actual decision to end Allred's employment was made before the Council's vote on the issue. Richardson informed Allred that he would no longer be police chief *before* the appointment session, and made an in-session suggestion to appoint someone other than Allred. The appointment session itself consisted of a swift vocal vote on Bobo, and Allred's name was never before the Council. Such facts distinguish this case from those where courts have found that review by a city council prevented a finding that a single city official was a "final policymaker." *Cf. Quinn*, 330 F.3d 1320, 1326 (emphasizing that the plaintiff received a thorough, three-day "full adversarial and evidentiary" review of the city official's initial decision, and that the plaintiff had provided no "evidence that the Council approved any improper motive that [the city official] may have had").

Furthermore, even if Richardson is not the "final policymaker," Allred still has a potential argument that the actions of the Council should hold Carbon Hill municipally liable, as it is uncontested that the Carbon Hill City Council would be considered the "final policymaker" for the purposes of municipal liability should

Richardson not fit that role. Allred offers evidence that Richardson's stated reason for firing Allred was because of Allred's association with his wife and her mayoral campaign. Allred offers further evidence that Richardson and the Council discussed Allred's employment behind closed doors in the executive session, and it is reasonable to infer that Richardson conveyed to the Council the same reasons for not reappointing Allred. Whether the Council or Richardson carries the label, there is potentially a "final policymaker" who violated Allred's freedom of association rights, and thus a sufficient basis for municipal liability.

Having decided that a "final policymaker" exists, there is sufficient evidence for a jury to find that "a policy or custom" disregarding Allred's freedom of association rights. Finally, there is evidence that the "custom or policy" at issue caused Allred's termination, since Allred states that Richardson told him in their final meeting that he was firing Allred because of Allred's association with his wife's campaign. Because Allred can potentially show not only a violation of his First Amendment rights, but also that violation was caused by a "policy or custom" of Carbon Hill, summary judgement is due to be denied on the municipal liability issue.

### 6.   *Dismissal of Any Claims Brought Against Richardson in His Official Capacity*

Allred appears to have attempted to sue Richardson in his official capacity in

addition to suing Carbon Hill directly. However, there is no important distinction between a claim brought against a government employee in his official capacity and a claim brought directly against the governmental entity. *See Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1184–85 (M.D. Ala. 1999) (stating that "official-suit capacities . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985))); *see also id.* (stating that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects, other than name, to be treated as a suit against the entity"). Therefore, this Court dismisses any official-capacity claims against Richardson.

## IV.   CONCLUSION

For the foregoing reasons, Carbon Hill and Richardson's motion for summary judgment (Doc. 38) is GRANTED with respect to Allred's due process claim under 42 U.S.C. § 1983 and wrongful termination claim under Ala. Code § 11-43-230. Carbon Hill and Richardson's motion is DENIED in all other respects. To the extent that Allred has attempted to bring claims against Richardson in his official capacity, those claims are DISMISSED with prejudice.

A separate Order will be entered.

Done this <u>24th</u> day of <u>October</u> 2014.


_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

177822